IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JARRET FATE,

        Plaintiff,

v.

NATHAN HARPER Pittsburgh Police Chief
in his official and individual capacity, CMDR.
GEORGE TROSKY in his official and
individual capacity, and THE CITY OF
PITTSBURGH,

        Defendants.

12cv0459
**ELECTRONICALLY FILED**

# MEMORANDUM OPINION RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. NO. 28)

## I. Introduction

This case centers on a May 1, 2010, car accident and resultant altercation between Plaintiff, Jarret Fate ("Plaintiff"), and Bradley Walker ("Walker"), a Pittsburgh Police Detective, and the alleged liability of the Defendants: Pittsburgh Police Chief Nathan Harper, in his official and individual capactity ("Chief Harper"); Commander George Trosky, in his official and individual capacity ("Commander Trosky"); and the City of Pittsburgh.

Plaintiff's Complaint contains three causes of action: Count I-Unconstitutional Seizure under 42 U.S.C. § 1983 and the 4th and 14th Amendments of the United States Constitution; Count II-Policy, Custom, and Practice (42 U.S.C. § 1983)-Having Policies, Customs, and Practices that Lead to Abuse; and Count III-Deliberate Indifference of Supervisors pursuant to 42 U.S.C. § 1983. Id. In essence, Plaintiff alleges that Walker violated his constitutional rights and that Defendants' policies and customs lead to Walker's actions.

Currently pending before this Court is a Motion for Summary Judgment filed on behalf of all Defendants. Doc. No. 28.

After careful consideration of Defendants' Motion (Doc. No. 28), brief in support thereof (Doc. No. 29), Plaintiff's brief in opposition thereto (Doc. No. 34), and the parties' concise statements of material facts (Doc. Nos. 30, 35), Defendants' Motion for Summary Judgment (Doc. No. 28) will be DENIED for the reasons that follow.

**II. Statement of Facts**

On Saturday, May 1, 2010, Plaintiff was driving his 1975 Porsche on the outbound side of the Parkway East near the Oakland exit. Doc. No. 35, ¶ 1. Walker was also driving in the same area. Id. at ¶ 2. When Plaintiff changed lanes to exit the highway, his vehicle collided with Walker's vehicle. Id. at ¶ 4-5. Both drivers stopped their vehicles on the side of the highway. Id. at ¶ 6.

Walker approached Plaintiff's vehicle. Id. at ¶ 7. He kicked the vehicle and then reached inside the Plaintiff's driver's side window. Id. Walker choked Plaintiff and yelled profanities. Id. Plaintiff accelerated his vehicle and drove up the berm of the exit ramp until he was stopped by traffic. Id. at ¶ 8. Walker followed Plaintiff in his vehicle and pulled his vehicle in front of Plaintiff's. Id. at ¶ 9. Walker approached Plaintiff's vehicle. Id. at ¶ 10. He punched Plaintiff's driver's side window which caused it to shatter. Id. He also broke Plaintiff's vehicle's windshield. Id. at ¶ 11. Walker used profanities during this encounter. Id. at ¶ 10.

The rest of the encounter is disputed. Both parties agree that Walker sought Plaintiff's driver's license and registration. Plaintiff alleges that it was "demanded." Id. at ¶ 12. Defendants state that Walker "asked" for the information. Id. Both parties agree that Walker possessed his service weapon during the encounter. Id. at ¶¶ 13, 48. Plaintiff alleges that

2

Walker brandished the firearm and pointed it at his face. Id. Plaintiff gave Walker his information. Id. at ¶ 14. It is disputed whether Walker gave Plaintiff his driver's license and registration information. Id. at ¶ 15. Walker threw Plaintiff's information into Plaintiff's driver's side window. Id. at ¶ 16. Plaintiff did not know that Walker was a police officer during the encounter. Id. at ¶ 24.

Walker left the scene of the encounter. Id. at ¶ 17. It was subsequently discovered that Walker proceeded to take his son to work. Id. Plaintiff contends that Walker contacted the Zone 2 Police Station and made a report to City of Pittsburgh Officer Freeman. Id. Walker considered charging Plaintiff with crimes because of their encounter. Id.

Subsequent to this incident, Walker was arrested and found guilty of summary harassment, recklessly endangering another person, physical menace with a gun, and criminal mischief. Id. at ¶ 19. Prior to his criminal trial, Walker was terminated from the City of Pittsburgh Bureau of Police. Id. at ¶ 20.

### III. Standard of Review

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 197 (3d Cir. 1994). Disputes must be both: (1) material, meaning concerning facts that will affect the outcome of the issue under substantive law, and (2) genuine, meaning the evidence

3

must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

A party moving for summary judgment has the initial burden of supporting its assertion that fact(s) cannot be genuinely disputed by citing to particular parts of materials in the record – i.e., depositions, documents, affidavits, stipulations, or other materials – or by showing that: (1) the materials cited by the non-moving party do not establish the presence of a genuine dispute, or (2) that the non-moving party cannot produce admissible evidence to support its fact(s). Fed.R.Civ.P. 56(c)(1).

Conversely, in order to defeat a motion for summary judgment, the non-moving party must support its assertion that fact(s) are genuinely disputed by citing to particular parts of materials in the record, or by showing that: (1) the materials cited by the moving party do not establish the absence of a genuine dispute, or (2) the moving party cannot produce admissible evidence to support its fact(s). Id.

In reviewing a motion for summary judgment, the Court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

### IV. Discussion

In support of the Motion for Summary Judgment, Defendants contend that: (1) Walker did not act under the color of state law during his encounter with Plaintiff; and (2) even if Walker was acting under color of state law, Plaintiff cannot demonstrate that the municipality itself, through implementation of policy or custom, caused the underlying constitutional violation. Doc. No. 29.

*A. A Reasonable Jury Could Conclude that Walker was Acting Under Color of State Law*

The United States Supreme Court has held that "the traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) quoting *United States v. Classic*, 313 U.S. 299, 326 (1941). Both parties cite *Barna v. City of Perth Amboy*, 42 F.3d 809 (3d Cir. 1994) to support or oppose their positions. In that case, the United States Court of Appeals for the Third Circuit held that:

> [O]ff duty police officers who purport to exercise official authority will generally be found to have acted under color of state law. Manifestations of such pretended authority may include flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed by police department regulations.

*Barna*, 42 F.3d at 816.

The inquiry into whether a defendant is acting under color of state law is very fact specific. Viewing the facts of the encounter and Walker's subsequent actions in the light most favorable to Plaintiff, the non-moving party, sufficient evidence exists such that a reasonable jury could conclude that Walker was acting under color of state law.

Specifically, Walker:

- Was off-duty, but within his jurisdiction (Doc. No. 35, ¶ 3);

- Normally worked as a plainclothes officer (Exhibit B, 263, ¶ 20);

- Attempted to make a traffic stop by blocking Plaintiff's vehicle (Doc. No. 35 at ¶¶ 9, 50);

- Demanded Plaintiff's license, registration, and insurance information, which is standard City of Pittsburgh Police practice (Id. at ¶¶ 12, 43);

5

- Brandished his City-issued firearm (Id. at ¶¶ 13, 45, 48, 51);

- Demanded that Plaintiff get out of his vehicle (Id. at ¶ 52);

- Directly called on-duty police officers to make an oral report (Id. at ¶¶ 17, 18, 57);

- Did not call 911 to report the incident because "being a detective with the city, it's easy for me to call somebody at the station that I know . . . it's the station I worked at [on May 1, 2010]. And it's convenient." (Id. at ¶ 58);

- Attempted to file charges against Plaintiff (Id.); and

- Used Plaintiff's license, registration, and insurance information solely to pursue filing of criminal charges against Plaintiff (Id. at ¶ 59).

Walker's actions are distinct from those in *Thornton v. City of Pittsburgh*, 2011 WL 2784576 (W.D. Pa.) (Lancaster, J.), upon which Defendants rely. Unlike the actors in *Thornton*, Walker brandished an officially issued firearm, took actions that were standard police procedure, and directly called on duty officers to complete an incident report. A reasonable jury could conclude that these acts were only possible because of Walker's position as a City of Pittsburgh detective and, therefore, that he was acting under the color of state law.

*B. A Reasonable Jury Could Conclude that Defendants are Liable pursuant to Monell*

Municipalities cannot be held liable under 42 U.S.C. § 1983 on a *respondeat superior* theory (*i.e.*, just because it employs the tortfeasor). *Monell v. Dep't of Soc. Servs*, 436 U.S. 658, 691 (1978). However, a municipality may be liable for an employee tortfeasor's actions because of a policy or custom which is the "moving force" of a constitutional violation. *Id.* at 694.

Here, Plaintiff alleges that Defendants are liable "by adopting policies, failing to supervise and even arming Det. Walker - - an individual known to be a serially violent, angry, aggressor and non-respecter of civil rights - - with arrest powers, a badge and a gun." Doc. No.

6

34, 8. Defendants contend that Plaintiff: (1) did not sue Walker in his individual capacity; (2) did not demonstrate that his constitutional rights were violated; and (3) has failed to show that the City engaged in a custom or policy that reflected deliberate indifference which was the moving force behind a constitutional violation. Doc. No. 29.

First, Plaintiff was not required to name Walker as a defendant. *Fagan v. City of Vineland*, 22 F.3d 1283, 1291-94 (3d Cir. 1994). Second, as discussed, sufficient evidence exists to support Plaintiff's claim that Walker violated his constitutional rights on May 1, 2010. Third, there is also sufficient evidence that the City's policies or custom reflected deliberate indifference which was the moving force behind Walker's actions.

Specifically, a reasonable jury could conclude that the City was aware of numerous complaints against Walker and had a custom of tolerating his repeated use of excessive force. During Walker's 17-year history with the City Police force, there were over 30 complaints for use of excessive force. Doc. No. 35, 14-20. There are nine incidents which involve choking, the same manner of force Walker used on Plaintiff. Id. at ¶¶ 1, 2, 7, 11, 21, 23, 25, 26, 32. There is also documentation that on May 23, 1999, Walker, while wearing plainclothes and operating an unmarked car, used profanity and pulled a gun in a road rage incident. Id. at ¶ 17. This incident is similar to the one at the center of Plaintiff's case and could lead a reasonable jury to conclude that the City was on notice, not only of Walker's repeated use of excessive force, but also his inclination to choke individuals and brandish his weapon. Plaintiff's knowledge of Walker's history of excessive force complaints at the time of their encounter is not required.

Plaintiff alleges that the City failed to discipline Walker for his repeated use of excessive force or train him on proper procedure. Therefore, because Walker's behavior went unabated, and uncorrected, it was, in essence, condoned by the City or at least was not restrained. These

7

allegations are sufficient to demonstrate that there may be an affirmative link between the policy or custom and the constitutional violation alleged, and thus, Defendants' Motion for Summary Judgment (Doc. No. 28) must be denied. *See City of Okla. City v. Tuttle*, 471 U.S. 808, 823 (1985), *Beitevicz v. Dubinon*, 915 F.2d 845 (3d Cir. 1990) (Plaintiff must "establish a municipal custom coupled with causation – i.e., that policy makers were aware of similar unlawful conduct in the past, but failed to take precautions against violations, and that this failure, at least in part, lead to [Plaintiff's] injuries.").

## V. Conclusion

Plaintiff's claims against Defendants are supported by sufficient evidence such that a reasonable jury could conclude that Walker was acting under the color of state law during the May 1, 2010, road rage incident, and that Defendants are liable for his actions because of a policy or custom that was the "moving force" behind Walker's actions. Therefore, Defendants' Motion for Summary Judgment will be DENIED.

As set forth in this Court's Pretrial Order, the case will proceed to a jury trial set to begin on March 18, 2013. Doc. No. 16.

An appropriate Order follows.

                                                 s/ Arthur J. Schwab
                                                 Arthur J. Schwab
                                                 United States District Judge

cc:    All Registered ECF Counsel and Parties